UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE LUIS MORALES,

        Petitioner,

v.                       Case No: 2:14-cv-215-FtM-29CM

FLORIDA ATTORNEY GENERAL and
SECRETARY, DOC,

        Respondents.[1]

_____

**<u>OPINION AND ORDER</u>**

    This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jose Luis Morales ("Petitioner") who is presently confined at the South Bay Correctional Facility in South Bay, Florida (Doc. 1, filed April 14, 2014). Petitioner, proceeding *pro se*, attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Hendry County, Florida for attempted sexual battery and burglary with battery. <u>Id.</u> Respondent filed a response to the petition (Doc. 16). Petitioner filed a reply (Doc. 20).

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises two claims and three sub-claims in his petition. Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History

On June 8, 2009, Petitioner was charged by second amended information with sexual battery on a child less than twelve years of age by penetrating or causing union with the victim's vagina with his tongue, contrary to Florida Statute § 794.011(2) (count one); and with burglary, contrary to Florida Statute § 810.02 (count two) (Ex. 4A).[2]

Pursuant to a plea agreement, Petitioner pleaded guilty to attempted sexual battery and burglary with a battery (Ex. 2; Ex. 3 at 20-21). He was sentenced to concurrent terms of twenty years in prison on each count, to be followed by ten years of sex offender probation on count one (Ex. 2; Ex. 3 at 21-22).

---

[2] Unless otherwise noted, citations to exhibits are to those filed by Respondent on October 8, 2014 (Doc. 18).

On September 25, 2009, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he raised five claims of ineffective assistance of counsel ("Rule 3.850 motion") (Ex. 5).  All claims were denied by the post-conviction court (Ex. 8), but the appellate court remanded Claim Three for further proceedings (Ex. 12); _Morales v. State_, 69 So. 3d 1086 (Fla. 2d DCA 2011).  After an evidentiary hearing on Claim Three, the post-conviction court denied relief (Ex. 15; Ex. 15a; Ex. 15b).  Florida's Second District Court of Appeal affirmed the denial (Ex. 19); _Morales v. State_, 138 So. 3d 448 (Fla. 2d DCA 2014).

Petitioner filed the instant habeas petition on April 14, 2014 (Doc. 1).

## II.  **Governing Legal Principles**

### A.  **Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case.  White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406).  The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell,

540 U.S. at 17-18; Ward, 592 F.3d at 1155.   The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)).

## B.  Standard for Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell

below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13, (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." <u>Strickland</u>, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

In the context of a guilty plea, the first prong of <u>Strickland</u> requires that a petitioner show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. <u>Hill v. Lockhart</u>, 474 U.S. 52, 56-59 (1985).  The second prong requires that the petitioner show a reasonable probability that, but for counsel's errors, he would have entered a different plea. <u>Id.</u>

**C.   Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of

the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner

"must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986).   To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A.   **Claim One**

Petitioner asserts that counsel was ineffective because he coerced him into entering a guilty plea which was not knowing,

intelligent, and voluntary in accordance with <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969).[3]  Specifically, he asserts that he did not understand the plea process because: (1) he was not given a copy of the plea agreement in Spanish and does not speak English; (2) he did not understand that his guilty plea was a waiver of his claim of innocence; (3) he only entered the plea because he was afraid that he would not win at trial and would receive a mandatory life sentence (Doc. 1 at 6).

Petitioner raised the substance of these claims in his Rule 3.850 motion and asserts that "any expansion of this claim is authorized by the holding in <u>Martinez v. Ryan</u>." (Doc. 1 at 6).[4]

---

[3] <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969) ("The record must show, or there must be an allegation and evidence which show that an accused was offered counsel but intelligently and understandingly" pleaded guilty.)

[4] In <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Id.</u> at 1320.  In 2013, the Supreme Court confirmed that the <u>Martinez</u> ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. <u>Trevino v. Thaler</u>, 133 S. Ct. 1911, 1921 (2013).

To the extent they were raised in state court, these claims were denied by the post-conviction court, and the denials were affirmed by Florida's Second District Court of Appeal (Ex. 8; Ex. 12). Each sub-claim will be addressed separately.

> **1.  Counsel was not ineffective for failing to ensure that Petitioner received a Spanish version of his plea agreement**

Petitioner asserts, without further explanation, that counsel was ineffective for failing to ensure that he receive a Spanish copy of the plea agreement because he (Petitioner) speaks only Spanish (Doc. 1 at 6).  Petitioner admits that he did not exhaust this claim in the state courts, but urges that his failure to do so is excused by Martinez v. Ryan (Doc. 1 at 6).  Upon review of the record, the Court finds that this claim is unexhausted because it is not "substantial" and does not fall within Martinez' equitable exception to the procedural bar.

At the evidentiary hearing on Petitioner's Rule 3.850 motion, defense counsel testified that he had no specific memory of going over the plea form with Petitioner, but explained that "the offer would have been explained and until he totally – with an interpreter – until he totally understood all the parameters of the offer, what his options were, he could still go to trial, this

---

Under Martinez, a petitioner still must establish that his underlying ineffective assistance claim is "substantial" -- that is, that it has "some merit" before the procedural default can be excused.  Martinez, 132 S. Ct. at 1318-19.

is the offer they're making now.  This is the options you have.
And whether to take that plea or go to trial." (Ex. 15A at 19-20).
Petitioner's post-conviction counsel asked defense counsel for
clarification:

> Q.  Now, because you don't have a specific
>     memory of that conversation with Mr.
>     Morales you don't recall whether or not
>     he might have had some problems through
>     the interpreter in understanding that
>     concept?
>
> A.  The only way that I made sure that they
>     did — they could understand those
>     concepts, because some of them are hard
>     to understand, is when I explained the
>     plea form to them and I asked them, do
>     you understand this and they would say
>     yes.  I would say, okay, explain it to
>     me.  And if they — and until they could
>     explain it back to me satisfactorily that
>     I knew the concept we were not ready to
>     enter a plea.

Id. at 21.  At the same hearing, Petitioner testified that counsel
had gone over the plea offer with him "completely" several days
before his trial was scheduled (Ex. 15B at 12-13).  In its order
on Petitioner's Rule 3.850 motion, the post-conviction court
specifically found counsel's testimony at the evidentiary hearing
regarding his routine practices to be credible (Ex. 15 at 3-4).
Federal habeas courts have "no license to redetermine credibility of
witnesses whose demeanor has been observed by the state trial court,
but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983).
Accordingly, this Court gives great weight to defense counsel's

testimony that he routinely reviewed plea agreements with a client until he was certain that the client understood the agreement.

A conclusion that Petitioner completely understood the plea agreement is supported by his statements at his plea colloquy. Petitioner affirmed under oath that he read and signed the English plea form with the assistance of the same Spanish translator who was with him at the colloquy (Ex. 3 at 5-6).  The trial court specifically queried about Petitioner's understanding:

> Q.   Are you under the influence of anything today that would affect your ability to understand what is going on here?
>
> A.   I have never been in jail before.  You know, you don't get too much sleep.
>
> Q.   Do you think your lack of sleep, if that is correct, is in any way affecting your ability to understand what I have been saying?
>
> A.   **No. I understand.**
>
> Q.   Have you also understood everything that your attorney discussed with you, both this morning before we were going to bring the jury down and this afternoon when [counsel] had to review the plea form with you?
>
> A.   **Yes. I understood.**

(Ex. 3 at 8) (emphases added).  A defendant's statements at the plea hearing are presumed to be true. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).  Petitioner has offered no compelling evidence that he lied at both his plea colloquy and the evidentiary hearing on his

Rule 3.850 motion.  Therefore, this Court concludes that Petitioner understood the English plea agreement. <u>See</u> <u>United States v. Desenclos</u>, 604 F. App'x 867, 868 (11th Cir. 2015) ("We presume that [the petitioner's] sworn statements were true unless he offers compelling evidence to the contrary.").

Reasonable, competent counsel could have decided that providing Petitioner with a Spanish version of the plea agreement was unnecessary because Petitioner completely understood the English version of the agreement. <u>Dingle v. Sec'y, Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007)("Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.").  Likewise, because Petitioner completely understood the plea agreement, counsel's failure to provide Petitioner with a Spanish copy could not have affected his decision to plead guilty.

Petitioner has satisfied neither prong of <u>Strickland</u> or <u>Hill</u> on this claim. Therefore, the claim is not "substantial" so as to excuse his failure to exhaust it in state court. <u>Martinez</u>, 132 S. Ct. at 1318-20.  Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim.  Accordingly, this sub-claim is dismissed as unexhausted.

> **2.   Counsel was not ineffective for failing to ensure that Petitioner understood his guilty plea was a waiver of his claim of innocence**

Petitioner insists that he had no intent to commit a sexual assault on the victim when he entered her home (Doc. 1 at 15).   He asserts that had he "known that intent was required to prove these crimes and had he known, he would have refused to accept the plea and would have insisted upon going to trial and testify that there was no intent." Id. at 16.

Petitioner raised a similar claim in his Rule 3.850 motion (Ex. 5).[5]  The post-conviction court denied the claim:

> Defendant argues that his plea was involuntary because counsel failed to investigate the case and advise Defendant of the facts in relation to the law.   Defendant alleges there was no factual basis for the burglary charge.
>
> . . .
>
> The purpose of the factual basis requirement is to prevent a defendant from mistakenly entering a plea to the wrong offense. Williams v. State, 316 So. 2d 267 (Fla. 1975).   Prior to accepting a plea of no contest, the trial judge must receive in the record factual information to establish the offense to which the defendant has entered his plea. Williams v. State, 316 So. 2d 267, 271 (Fla. 1975). Here, there was sufficient substantiation of the factual basis contained in the police report. Farran v. State, 694 So. 2d 877 (Fla. 2d DCA 1997).   A copy of the booking report is attached.
>
> Defendant's remaining allegations are also refuted by the record.   Defendant asserted in

---

[5] In his Rule 3.850 motion, Petitioner asserted that his plea was involuntary because counsel failed to "investigate the facts of the case and advise defendant of the facts in relation to the law." (Ex. 5 at 15).   Although now parsed in terms of "factual basis," the gravamen of the instant claim is essentially the same as that raised below.

the plea form that counsel had discussed with
him the information, the essential elements of
the crimes, any possible defense, and the
evidence against him.      Defendant further
asserted he was fully satisfied with counsel
and that counsel had effectively assisted him
in all aspects of his defense.      Defendant
testified that he was satisfied with counsel,
and had discussed the case fully with counsel.
Counsel stated that he had reviewed [all the]
evidence with Defendant. Claims of ineffective
assistance of counsel or coercion are refuted
by the written or oral statements to the
contrary made at the time of the plea. Rackley
v. State, 571 So. 2d 533 (Fla. 1st DCA 1990);
Stewart v. State, 511 So. 2d 375 (Fla. 1st DCA
1987); Jauregui v. State, 652 So. 2d 898 (Fla.
3d DCA 1995).      Defendant is bound by the
statements he made under oath, and is not
entitled to have his plea set aside by
subsequently claiming the plea was involuntary
based on his own allegedly perjured testimony
during the plea. Henry v. State, 920 So. 2d
1245 (Fla. 5th DCA 2006).

(Ex. 8 at 6-7) (internal citations to the record omitted).

Florida's Second District Court of Appeal affirmed (Ex. 12).   A

review of the record supports the state courts' rejection of this

claim.

Petitioner's signed plea agreement states that his lawyer

explained to him the essential elements of the crimes and possible

defenses to the crimes (Ex. 2 at 2).    At the plea colloquy

Petitioner agreed that he understood he was giving up the right to

have a jury decide whether every element of the offenses was proved

(Ex. 3 at 6).[6]   As discussed above, the record supports a

---

[6] Petitioner was also informed by the trial court that: (1)
he faced a thirty-year maximum prison sentence on count one and

conclusion that Petitioner understood the plea agreement. <u>See</u> discussion <u>supra</u> Part III(A)(1). In support of the instant claim, Petitioner points to a portion of the plea colloquy with the trial court which, he argues, demonstrates that he did not understand the charges against him:

> Q. Has anyone promised you or threatened you with anything we do not know about to get you to enter the plea?
>
> A. No, but I am scared.
>
> Q. And we're going to talk about that in a second. Listen carefully. Has anyone promised you or threatened you with anything to get you to enter a plea of guilty to these charges?
>
> A. No. I'm afraid for what might happen, what you say I can get.
>
> Q. So the fear you're talking about is not because the State or [counsel] has threatened you with anything. You are afraid because you understand what the maximum penalty is if you were to be found guilty; is that correct?
>
> A. Uh-huh, yes.
>
> Q. Okay. That's not unexpected.
>
> A. **Because there was no intent on what I did.**

---

life in prison on count two if convicted at trial; (2) he was giving up his right to plead not guilty and his right to a trial; (3) he was giving up the right to see and hear witnesses testify; and (4) the right to testify in his own defense (Ex. 3 at 5-7). Petitioner said that nobody had promised or threatened him with anything to get him to plead guilty and that he believed it was in his best interest to enter a plea. <u>Id.</u> at 7-8.

Q.    But you understand you are making this
      decision because you believe it is in
      your best interest to enter a plea?

A.    Yes.

(Ex. 3 at 7-8) (emphasis added).  It is not clear what Petitioner
meant by his statement regarding intent.  However, reasonable
counsel could have determined that Petitioner's isolated statement
regarding intent did not indicate confusion as to the elements of
the charges against him.  Accordingly, Petitioner fails to
demonstrate deficient performance.

Even if Petitioner's brief statement that "there was no
intent" could be construed as a claim that he had not intended to
sexually batter the four-year-old victim or had not intended to do
so at the time he entered her home, Petitioner also told the court
that he believed it was in his best interest to enter a guilty
plea.  Id.   The record demonstrates a factual basis for
Petitioner's guilty plea.  See discussion infra Part III(B).
Further, Petitioner faced a sentence of thirty years in prison on
the sexual battery charge and life in prison on the burglary charge
if convicted at trial.  Id. at 5.   Petitioner obtained a clear
benefit from entering a guilty plea – a twenty year sentence
instead of a potential life sentence – and the reduction of count
one to attempted sexual battery.  Petitioner admitted during the
colloquy that he entered the guilty plea because he was afraid of
receiving the maximum sentence of life in prison if convicted at

trial.  Id. at 7.  At the evidentiary hearing on his Rule 3.850 motion, Petitioner admitted that defense counsel told him that he could not predict the outcome of his case if he proceeded to trial, and that he entered a plea because he was afraid – presumably of receiving a life sentence (Ex. 15A at 12).

Petitioner has not demonstrated a reasonable probability that, had he better understood the concept of intent, "he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.  This claim fails to satisfy either prong of Strickland or Hill and is denied pursuant to 28 U.S.C. § 2254(d).

> **3.  Petitioner's fear of receiving a life sentence if convicted at trial does not render his plea involuntary**

The fact that Petitioner based his decision to enter a guilty plea on his fear of receiving a life sentence if convicted at trial does not make his plea involuntary.  A reduced sentence pursuant to a plea agreement is an important factor for any defendant to consider when deciding whether to enter a plea and waive his right to a jury trial. Roberts v. United States, 472 F.2d 1195, 1196 (5th Cir. 1973) (guilty plea entered with the advice of counsel is not rendered invalid if made to avoid a harsher penalty).  The state may not coerce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. Brady v. United States, 397 U.S. 742, 750-51 (1970).  Only physical

harm, threats of harassment, misrepresentations, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)" render a guilty plea legally involuntary. Brady, 397 U.S. at 755. No constitutionally impermissible coercion arises when a defendant is forced to choose between the possibility of a long prison sentence if he goes to trial or a shorter sentence if he pleads. See Brady, 397 U.S. at 751.

Petitioner admitted at his Rule 3.850 hearing that counsel told him prior to the plea that he was prepared to go to trial and "fight it to the judge and the jury and the State" but that he could not "read [Petitioner's] future." (Ex. 15A at 11-12). Petitioner testified that it was his fear of a life sentence that convinced him to take the State's twenty-year plea offer. Although Petitioner's fear of receiving life in prison if convicted at trial was obviously a determinative factor in his decision to plead guilty, neither counsel nor the State improperly threatened, forced, or coerced Petitioner into entering the guilty plea as he acknowledged during the plea hearing (Ex. 3 at 7).

Petitioner has failed to satisfy Strickland's performance prong and this sub-claim is denied pursuant to 28 U.S.C. § 2254(d).

**B.   Claim Two**

In Claim Two, Petitioner repeats the same argument as raised in Claim One's second sub-claim. He appears to argue that counsel

should have either halted the plea colloquy or objected when Petitioner made his cryptic "no intent" comment to the trial court because the plea should not have been accepted by the trial court for lack of a sufficient factual basis (Doc. 1 at 17).  Petitioner urges that, to the extent he did not exhaust this claim in the state courts,[7] his failure to exhaust is excused by Martinez (Doc. 20 at 7-8).  Upon review of the record, the Court finds that this claim is not "substantial" and does not fall within Martinez' equitable exception to the procedural bar.

Petitioner argues that while he admitted to having committed some act, "there was no malicious or sexual intent. And clearly he wanted the court to know there was no intent.  However, the subsequent plea of guilty would seem to directly conflict with that assertion." (Doc. 20 at 6).  As noted in Claim One, Petitioner's lone reference to being afraid of his potential sentence because "there was no intent on what [he] did" was not a clear statement of innocence (Ex. 3 at 7-8).  When examined in context, the statement could have meant *inter alia* that Petitioner had no intent of receiving a life sentence, of hurting the victim, or of getting caught. Immediately after making the statement, Petitioner affirmed that he made the decision to plead guilty

---

[7] To the extent this argument is exhausted, it is identical to the claims raised in the second and third sub-claims of Claim One and is denied for the same reasons. See discussion supra Part III(A).

- 22 -

because it was in his best interest to do so (Ex. 3 at 7-8).   At his Rule 3.850 hearing, Petitioner testified that he accepted the state's plea offer because counsel could not predict the outcome of a trial and because counsel had told him that the state had very strong discovery against him (Ex. 15B at 11, 12).

The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty. United States v. Owen, 858 F.2d 1514, 1517 (11th Cir. 1988)(per curiam).   Florida law is consistent in this regard.   See Williams v. State, 316 So. 2d 267, 271 (Fla. 1975) ("The sole purpose of the [requirement to establish a factual basis] is to determine the accuracy of the plea, thereby avoiding a mistake. The trial judge . . . is to ensure that the facts of the case fit the offense with which the defendant is charged.").   A claim that no factual basis existed for a plea may be refuted by attachment of discovery documents — such as police reports, probable cause affidavits, or depositions — establishing that a factual basis actually existed. Harris v. State, 32 So. 3d 197 (Fla. 4th DCA 2010); see also Benavidez v. State, 749 So. 2d 528, 529 (Fla. 2d DCA 1999) (claim that "trial counsel was ineffective for advising [defendant] to plead no contest to a crime that he did not commit and for which no factual basis was established," could be refuted

"[i]f other documents in the court file, such as police affidavits, substantiate the factual basis for the offense[.]'").

In the instant case, as noted by the post-conviction court, the statement of probable cause contained within the arrest report provided sufficient factual basis for the guilty plea (Ex. 1). The statement alleged that Petitioner, who lived next door to the four-year-old victim, entered her home through an unlocked back door, woke her up, and performed oral sex on her (Ex. 1). In addition to the statement, the record contained a detailed order granting the state's motion to allow the child's statements to her grandmother and mother, detailing the sexual battery, to be presented at trial (Ex. 1C at 1-13). DNA collected at the scene was inculpatory (Ex. 3 at 14-15). The statement indicated that the child victim told her mother that Petitioner entered her bedroom as she slept, pulled her shorts and panties down and put his mouth on her vagina with his tongue. Id. The victim's grandmother told police that Petitioner did not have permission to enter the victim's home. Id. The trial court noted that it had reviewed Petitioner's file, which contained both the probable cause statement and the order on child hearsay statements and found a factual basis for Petitioner's plea (Ex. 3 at 19).[8]   Because

---

[8] The state also indicated at the plea colloquy that it possessed inculpatory DNA evidence (Ex. 3 at 20).

there was a factual basis for the plea, counsel was not ineffective for failing to halt the plea colloquy.

Claim Two is not "substantial" so as to excuse Petitioner's failure to exhaust it in state court. Martinez, 132 S. Ct. at 1318-20. Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim. Accordingly, Claim Two is dismissed as unexhausted.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   **Certificate of Appealability**[9]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

(2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller–El v. Cockrell, 537 U.S. 322, 335–36 (2003).   Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

ACCORDINGLY, it is hereby **ORDERED:**

1.   The Florida Attorney General is dismissed from this action.

2.   The first sub-claim of Claim One and Claim Two of Petitioner's 28 U.S.C. § 2254 petition are **DISMISSED**.   All remaining claims are **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___2nd___ day of November, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Jose Luis Morales
Counsel of Record

- 26 -